## NEW YORK LIFE INS. CO.
## v.
## BARNETT.
### No. 35718.

Supreme Court of Oklahoma.
Dec. 15, 1953.

William H. Martin, Tulsa, for plaintiff in error.

Leslie Webb, Eldon J. Dick, Tulsa, for defendant in error.

ARNOLD, Justice.

This is an action by Myrtle Barnett against the New York Life Insurance Company to recover death benefits under double indemnity provisions of a life insurance policy. The primary liability under the policy is in the sum of $1,000. The policy contains a provision for an additional benefit of $1,000 in the event death results directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means. It provides however that such double indemnity benefits shall not be payable if the insured's death results from infirmity of body or mind, illness or disease.

Plaintiff was the wife of insured and is designated beneficiary under the policy. Defendant paid to her the primary liability under the policy but denies liability under the double indemnity clause.

At the consclusion of the evidence both parties moved for a directed verdict. The trial court overruled defendant's motion and sustained plaintiff's motion. The jury returned a verdict in favor of plaintiff in the sum of $1,000 and judgment was entered on the verdict accordingly.

Defendant appeals and assigns as error the overruling of its motion for a directed verdict and the sustaining of plaintiff's motion. These assignments will be considered together.

The evidence shows that on and prior to January 10, 1951, the insured was employed by Spartan Aircraft Company of Tulsa, Oklahoma. He and a fellow employee were assigned to the duties of assembling aluminum tops of trailers which were being manufactured by the Aircraft Company and on said date the insured and his fellow employee were engaged in transferring a section of an aluminum trailer top, weighing about three hundred pounds and thirty feet long, from a stationary jig which held the section of the top and placing it on a movable jig which was on rollers and standing close by.

On this occasion the insured lifted one end of the section top and his fellow employee the other. Insured's edge came out of the jig and started to slip and fall. Insured kept hold of and lifted the top in order to prevent it from falling to the floor. While so doing he felt a severe pain and hurting in his chest. The trailer top did not fall against insured. Shortly thereafter deceased went to a clinic where he saw and was treated by a doctor.

Plaintiff testified that on January 19, 1951, insured was feeling fair. He had been driving a car going to the clinic to see the

doctor, walking around and going to the grocery store. On the afternoon of January 19, 1951, the insured went by automobile to the Spartan Aircraft plant then to the grocery store and returning home about 5:30 p. m. He mixed up some paint and painted the molding or coping at the ceiling in the front room of his home. He stood on a stool about two and one-half feet in height while painting and had painted for about ten minutes; he then sat down on the divan, became unconscious and died thirty minutes later.

The doctor at the clinic testified that insured had reported to him that he was lifting a trailer top and had a sudden pain in his right chest. On examination he was found to have a separation of the seventh and eighth cartilages which connect the ribs to the breastbone. The doctor fitted him with a mechanical device to hold the cartilages in position and again saw the insured at the clinic on January 11th, 15th and 17th. On the latter date he found insured was improved and thought he was then able to do some light work; that there was nothing alarming at the time about insured's condition. It was his opinion that the insured's injuries did not justify or warrant one's worrying about death. He was shown an autopsy performed by some other doctor which autopsy showed that insured had a dissecting aneurysm which ruptured into the pericardial sac around the heart which blocked off the heart and caused it to stop beating. The aorta of insured was not normal but was in a diseased condition. The injury sustained by insured on January 10, 1951, may have been an aggravating factor of a pre-existing condition. On cross-examination the doctor stated in his opinion the strain sustained by insured might have caused the rupture or it may have been an aggravating factor. The outside force or strain hastened the rupture of his aneurysm. In the absence of an injury insured might not have died from the ruptured aneurysm but might have lived for many years without ever having had a rupture or hemorrhage. There was no history of anything else that could have caused the rupture except the history of strain and physical findings of separation of the margin of the ribs on the right side.

The doctor who performed the autopsy testified that in his opinion the cause of insured's death was a dissecting aneurysm of the aorta which ruptured into the pericardial sac causing a cardiac tamponade which interfered with the beating of the heart; that the wall of the artery had slipped down the middle causing a separation of the wall and inside the wall was a blood pool; that the rupture and diseased condition of the aorta was the thing that caused insured's death; that the death in all probability would have resulted therefrom though insured had never suffered any strain or injury.

This in substance constituted the evidence offered in the case. We think it sufficient to take the case to the jury. New York Ins. Co. v. Wise, 207 Okl. 622, 251 P.2d 1058.

The jury under the evidence might have found that while insured prior to the time he sustained his injury may have had an existing condition consisting of a diseased aorta which tended to weaken the blood vessels and make it more sensitive to injury by exertion or strain but that death would not have resulted from such condition in the absence of the injury sustained by him and that therefore the injury or strain sustained was the cause of his death; or, it might have found that death resulted because of the diseased condition of the aorta and that death would have resulted from such condition in the absence of injury.

It will thus be noted that the evidence as to the cause of the insured's death is conflicting. Neither party was entitled to a directed verdict. The trial court erred in directing a verdict in favor of plaintiff.

Judgment reversed and the cause remanded for a new trial.

HALLEY, C. J., and WELCH, CORN, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.